ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs

# THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| BETTY RABENER, as Successor-in-Interest to MICHAEL RABENER, Deceased; and individually, as Legal Heir of MICHAEL RABENER, Deceased, | ) ) ) ) ) | No. C08-229-JCS |
| Plaintiffs, | ) ) | COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; |
| vs. | ) ) | DEMAND FOR JURY TRIAL |
| GENERAL ELECTRIC COMPANY and CRAMP SHIPBUILDING AND DRYDOCK COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

## I.

## PARTIES

1.      Plaintiff in this action are the above captioned successor-in-interest to, or the personal representative of the estate of Decedent; and the personal representatives on behalf of the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as "Plaintiffs".

2.      The person who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through the person's occupational exposure to asbestos, hereinafter "Decedent" is, with the date of death: MICHAEL RABENER died May 4, 2007.

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1    BETTY RABENER is a statutory wrongful death heir of MICHAEL RABENER.

2        3.      Decedent sustained an asbestos-related lung disease and death by precisely the

3    following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

4    containing products at decedent's jobsites.  The pathogenesis of decedent's asbestos-related

5    diseases is explained on **Exhibit A**, attached to plaintiff's complaint and incorporated by

6    reference herein.

7        4.      All of plaintiffs' claims arise out of a similar series of occurrences:  repeated

8    exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

9    and supplied to, installed and/or maintained by defendants at Decedent' worksites, over a period

10   of years, caused from release of toxic asbestos fibers and subsequent inhalation by the decedent,

11   resulting in cumulative, progressive, incurable lung diseases.

12       5.      Each plaintiff claims damages for an asbestos-related disease arising from an

13   identical series of occurrences not dependent on decedent's worksite but on the fact that

14   asbestos-containing products, when handled in the manner in which they were intended, released

15   harmful asbestos fibers which when inhaled by decedent, caused serious lung disease. The

16   allegations of plaintiffs regarding the nature of decedent's asbestos-related diseases, the nature of

17   asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all

18   identical.

19       6.      Plaintiffs are informed and believe, and thereon allege, that at all times herein

20   mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

21   proprietorships and/or other business entities organized and existing under and by virtue of the

22   laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

23   said defendants, and each of them, were and are authorized to do and are doing business in the

24   State of California, and that said defendants have regularly conducted business in the State of

25   California.

26   ////

27   ////

28

**II.**

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

7.      Jurisdiction:  Plaintiff BETTY RABENER is a citizen of California.   Defendant GENERAL ELECTRIC COMPANY is a  corporation incorporated under the laws of and having its principal places of business in Connecticut. Defendant CRAMP SHIPBUILDING AND DRYDOCK COMPANY is a  corporation incorporated under the laws of and having its principal places of business in Pennsylvania.

This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8.      Venue / Intradistrict Assignment.    Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred  within the County of San Francisco, California, and all of the defendants are subject to personal jurisdiction in this district at the time the action is commenced.

**III.**

**CAUSES OF ACTION**

FIRST CAUSE OF ACTION
(Negligence - Survival)

PLAINTIFF BETTY RABENER AS SUCCESSOR-IN-INTEREST TO THE DECEDENT MICHAEL RABENER COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, CRAMP SHIPBUILDING AND DRYDOCK COMPANY, THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM;  EACH FOR A COUNT FOR NEGLIGENCE (SURVIVAL) ALLEGE AS FOLLOWS:

9.      At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

1  or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

2  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

3  supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

4  representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

5  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating,

6  or otherwise directing and/or facilitating the use of, or advertising a certain product, namely

7  asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively

8  be called ALTERNATE ENTITIES.  Each of the herein named defendants is liable for the

9  tortious conduct of each successor, successor in business, successor in product line or a portion

10  thereof, assign, predecessor in product line or a portion thereof, parent, holding company,

11  affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned

12  entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

13  fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale,

14  supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed,

15  warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos,

16  and other products containing asbestos.  The following defendants, and each of them, are liable

17  for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a

18  virtual destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants,

19  and each of them, have acquired the assets, product line, or a portion thereof, of each such

20  ALTERNATE ENTITY; defendants, and each of them, caused the destruction of plaintiffs'

21  remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume

22  the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant

23  enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

24  DEFENDANT                                ALTERNATE ENTITY

25  GENERAL ELECTRIC COMPANY          MATTERN X-RAY
                                                    HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED
26                                                  TRUMBULL ELECTRIC MANUFACTURING COMPANY
                                                    G E INDUSTRIAL SYSTEMS
27                                                  GENERAL ELECTRIC JET ENGINES

28

CRAMP SHIPBUILDING AND DRYDOCK       WILLIAM CRAMP & SONS SHIPBUILDING
COMPANY,                               COMPANY
                                       CRAMP SHIPBUILDING COMPANY
                                       WILLIAM CRAMP & SONS CO.

10.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons".

12.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

////

13.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

14.     Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable.  Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference herein.

15.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to plaintiffs' complaint and incorporated by reference herein.

16.     Plaintiffs are  informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17.     Decedent suffered from a condition related to exposure to asbestos and asbestos-

1  containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-

2  containing products presented any risk of injury and/or disease.

3      18.    As a direct and proximate result of the aforesaid conduct of the defendants, their

4  "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,

5  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

6  amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this

7  complaint accordingly when the true and exact cost thereof is ascertained.

8      19.    As a direct and proximate result of the aforesaid conduct of the defendants, their

9  ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value

10  of medial care provided by decedent's family members measured by, inter alia, the costs

11  associated with the hiring a registered nurse, home hospice, or other service provider, the true

12  and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to

13  amend this complaint accordingly when the true and exact costs are known or at time of trial.

14      20.    As a direct and proximate result of the aforesaid conduct of defendants, their

15  ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his

16  person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer

17  and related sequelae, and the mental and emotional distress attendant thereto, and ultimately

18  death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be

19  proven at trial.

20      21.    As a further direct and proximate result of the said conduct of the defendants,

21  their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,

22  entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

23  pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is

24  requested to amend this complaint to conform to proof at the time of trial.

25      22.    As a further direct and proximate result of the said conduct of the defendants,

26  their ALTERNATE ENTITIES, and each of them, decedent's exposure to asbestos and asbestos-

27  containing products caused severe and permanent injury to Decedent, and ultimately Decedent

28  died on the date previously stated herein.

1  ////

2       23.      Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

3  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

4  had full knowledge of, or should have known of, each of the acts set forth herein.

5       24.      Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the

6  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

7  and each defendant's officers, directors, and managing agents participated in, authorized,

8  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

9  each of their ALTERNATE ENTITIES as set forth herein.

10      25.      The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

11 and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in

12 conscious or reckless disregard and indifference to the safety, health, and rights of "exposed

13 persons", including Decedent herein, giving rise to decedent's claim herein alleged for punitive

14 damages against said defendants.

15      WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as

16 hereinafter set forth.

17                     SECOND CAUSE OF ACTION

18                     (Products Liability - Survival)

19 PLAINTIFF BETTY RABENER AS SUCCESSOR-IN-INTEREST TO THE DECEDENT

20 MICHAEL RABENER COMPLAINS OF DEFENDANTS GENERAL ELECTRIC

21 COMPANY, CRAMP SHIPBUILDING AND DRYDOCK COMPANY, THEIR "ALTERNATE

22 ENTITIES,"AND EACH OF THEM;      EACH FOR A SECOND, SEPARATE, FURTHER

23 AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL),

24 COMPLAIN AS FOLLOWS:

25      26.      Plaintiffs incorporates herein by reference, as though fully set forth herein, each

26 paragraph of the First Cause of Action  herein.

27      27.      Defendants, their "alternate entities", and each of them, knew and intended that

28 the above-referenced asbestos and asbestos-containing products would be used by the purchaser

1    or user without inspection for defects therein or in any of their component parts and without

2    knowledge of the hazards involved in such use.

3    28.    Said asbestos and asbestos-containing products were defective and unsafe for

4    their intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

5    and/or death.  The defect existed in the said products at the time they left the possession of

6    defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

7    personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

8    persons", including Decedent herein, while being used in a reasonably foreseeable manner,

9    thereby rendering the same defective, unsafe, and dangerous for use.

10    29.    "Exposed persons" did not know of the substantial danger of using said products.

11    Said dangers were not readily recognizable by "exposed persons".  Said defendants, their

12    ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

13    which Decedent and others similarly situated were exposed.

14    30.    In researching, manufacturing, fabricating, designing, modifying, testing or

15    failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying,

16    offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying,

17    facilitating, promoting, representing, endorsing servicing, installing, contracting for installation,

18    repairing, marketing, warranting, rebranding, manufacturing for others, packaging and

19    advertising asbestos and asbestos-containing products, defendants, their ALTERNATE

20    ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed

21    persons" who came in contact with said asbestos and asbestos-containing products, in that said

22    defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there

23    was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-

24    containing products, including, but not limited to, asbestosis, other lung damages, and cancer.

25    Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or

26    with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and

27    which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of

28    them on or before 1930, and thereafter.

31.     On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

32.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

33.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design,

1  modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for

2  sale, supply, sale, inspection, installation, contracting for installation, repair, marketing,

3  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating,

4  or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-

5  containing products.  In pursuance of said financial motivation, said defendants, their

6  ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed

7  persons" and in fact were consciously willing and intended to permit asbestos and asbestos-

8  containing products to cause injury to "exposed persons" and induced persons to work with and

9  be exposed thereto, including Decedent.

10        34.     Plaintiffs alleges that the aforementioned defendants, their ALTERNATE

11  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

12  products, to be safe for their intended use, but that their asbestos and asbestos-containing

13  products, created an unreasonable risk of bodily harm to exposed persons.

14        35.     Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

15  their representations, lack of warnings, and implied warranties of fitness of asbestos and their

16  asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent

17  suffered permanent injury and death as alleged herein.

18        36.     As a direct and proximate result of the actions and conduct outlined herein,

19  Decedent have suffered the injuries and damages herein alleged.

20        WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities", and

21  each of them, as hereinafter set forth.

22                          THIRD CAUSE OF ACTION
                            (Negligence - Wrongful Death)
23

24  PLAINTIFF BETTY RABENER, INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND

25  AS SUCCESSOR-IN-INTEREST TO MICHAEL RABENER DECEASED,  COMPLAIN OF

26  DEFENDANTS GENERAL ELECTRIC COMPANY, CRAMP SHIPBUILDING AND

27  DRYDOCK COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH

28  FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR

NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

37.    Plaintiffs  incorporates by reference each paragraph contained within the First Cause of Action as though fully set forth herein.

38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth above.

39.    The individuals set forth as heirs constitute all of the surviving heirs of the Decedent.

40.    As a direct and proximate result of the conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

41.    Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

42.    As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of decedent's heirs.

43.    As a further direct and proximate result of the conduct of defendants, and each of them, and the death of decedent, decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

### FOURTH  CAUSE OF ACTION
(Products Liability - Wrongful Death)

PLAINTIFF BETTY RABENER, INDIVIDUALLY, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO MICHAEL RABENER DECEASED,  COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, CRAMP SHIPBUILDING AND

1  DRYDOCK COMPANY,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  AND

2  EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT

3  CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN

4  AS FOLLOWS:

5       44.     Plaintiffs incorporates herein by reference, as though fully set forth herein, each

6  paragraph of the First, Second and Third Causes of Action herein.

7       45.     As a direct and proximate result of the conduct of defendants, and each of them,

8  decedent's heirs have sustained the injuries and damages previously alleged.

9       WHEREFORE, plaintiffs prays judgment against defendants, their "alternate entities",

10  and each of them, as hereinafter set forth.

11                                            **IV.**

12                              **DAMAGES AND PRAYER**

13       WHEREFORE, plaintiffs prays judgment against defendants, their "alternate entities",

14  and each of them in an amount to be proved at trial in each individual case, as follows:

15       (a)     For plaintiffs' general damages according to proof;

16       (b)     For plaintiffs' loss of income, wages and earning potential according to proof;

17       (c)     For plaintiffs' s medical and related expenses according to proof;

18       (d)     For plaintiffs' cost of suit herein;

19       (e)     For exemplary or punitive damages according to proof;

20       (f)     For damages for fraud according to proof; and

21       (g)     For such other and further relief as the Court may deem just and proper, including

22  costs and prejudgment interest.

23   Dated: December 12, 2007                BRAYTON❖PURCELL LLP

24                                            /s/ David R. Donadio

25                                  By:   _____

26                                        David R.  Donadio
                                          Attorneys for Plaintiffs

27

28  ////

1

2                              **JURY DEMAND**

3          Plaintiffs hereby demand trial by jury of all issues of this cause.

4

5

Dated: December 12, 2007                    BRAYTON❖PURCELL LLP

6
                                             /s/ David R. Donadio
7
                                    By:    _____
8
                                           David R.  Donadio
9                                          Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

Plaintiff: MICHAEL RABENER

Decedent's injuries:  Decedent was diagnosed with Decedent was diagnosed with mesothelioma on or about April 2007.  Decedent died May 4, 2007.

Defendants:  Plaintiffs contends that the asbestos-containing products to which Decedent was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.

Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | U.S. Navy | | 1969-1971 |
| | Naval Training Center San Diego, CA | Trainee | 1969 |
| | OKLAHOMA CITY (CLG-5) ; Japan | Boiler Tender | 1969-1971 |

Job Duties:  Decedent attended basic training in San Diego, California, then was stationed aboard the OKLAHOMA CITY (CLG-5) where he served as a boiler tender.  Decedent recalled the ship first sailed to Pearl Harbor, Hawaii, for liberty, then to Japan, where it was stationed during the Vietnam War.  Decedent stood watch in the aft boiler room, punching tubes in the two boilers every 1600 hours of operation.  Decedent removed and installed refractory brick and mortar, tadpole gaskets on boiler door, packing and gaskets on the oil pumps, blowers, steam lines, steam traps and valves.  Decedent serviced INGERSOLL-RAND compressors.  Decedent would peel back asbestos insulation to get to flanges and re-wrap the steam lines with asbestos canvas. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

////

////

k:\injured\107467\exhibit a.wpd                    1

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Reliance Industries Chicago, IL | Reliance Industries Waukegan, IL | Mixer | 1972-1973 |

Job Duties:  Decedent mixed industrial dye for furniture. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Hanson Chevrolet W. Los Angeles, CA | Hanson Chevrolet W. Los Angeles, CA | Parts Clerk | 1973-1978 |

Job Duties:  Decedent worked the parts counter for this GENERAL MOTORS dealership. Decedent retrieved parts from the stock room and brought them to the counter where customers would pay for them.  Decedent recalled most products were manufactured by GENERAL MOTORS, with the exception of brake shoes and pads which were manufactured by BENDIX (HONEYWELL INTERNATIONAL, INC.).  Once per week on average, decedent would have to take parts to the mechanics in the service department.  Decedent recalled mechanics in the service department removing and installing brakes and engine gaskets strictly from GENERAL MOTORS vehicles. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Martin Cadillac W. Los Angeles, CA | Martin Cadillac W. Los Angeles, CA | Parts Clerk | 1978-1983 |

Job Duties:  Decedent worked the parts counter for this GENERAL MOTORS dealership. Decedent retrieved parts from the stock room and brought them to the counter where customers would pay for them.  Decedent recalled most products were manufactured by GENERAL MOTORS, with the exception of brake shoes and pads which were manufactured by BENDIX (HONEYWELL INTERNATIONAL, INC.).  Once per week on average, decedent would have to take parts to the mechanics in the service department.  Decedent recalled mechanics in the service department removing and installing brakes and engine gaskets strictly from GENERAL MOTORS vehicles. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Miller Chevrolet Culver City, CA | Miller Chevrolet Culver City, CA | Parts Clerk | 1983-1988 |

Job Duties:  Decedent worked the parts counter for this GENERAL MOTORS dealership. Decedent retrieved parts from the stock room and brought them to the counter where customers would pay for them.  Decedent recalled most products were manufactured by GENERAL MOTORS, with the exception of brake shoes and pads which were manufactured by BENDIX (HONEYWELL INTERNATIONAL, INC.).  Once per week on average, decedent would have to take parts to the mechanics in the service department which was adjacent to the parts department.  Decedent recalled mechanics in the service department removing and installing brakes and engine gaskets strictly from GENERAL MOTORS vehicles. Plaintiff currently contends that decedent was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Services for Police & Fire Long Beach, CA | Services for Police & Fire: various locations throughout southern California | Fundraiser | 1989-4/16/2007 |

Job Duties:  Decedent worked for a company that raised money for the local police and fire departments' retirement and children's services. Plaintiff is currently unaware if decedent was exposed to asbestos during this employment.